## CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY *v.* RISTY ET AL.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH DAKOTA.

No. 501. Argued February 21, 23, 1928.—Decided April 9, 1928.

1. A decree dismissing a suit to enjoin special tax assessments which in terms is without prejudice to the right of the plaintiff to contest the matters in question as though the suit had not been instituted or the decree entered, does not bar subsequent litigation of the same question. P. 569.

2. Due process of law does not require notice of a proceeding to determine merely whether an improvement shall be constructed, if land owners are later afforded an opportunity to be heard and to show that their property should not be assessed. P. 573.

3. A land owner, who, being duly notified, fails to avail himself of an opportunity afforded by a state statute to be heard upon the question whether his land will be benefited by a proposed public improvement and upon the constitutionality of including it in the proposed improvement district, cannot raise the question in this Court in a suit attacking the resulting assessment. P. 574.

Affirmed.

APPEAL from a decree of the District Court refusing an interlocutory injunction against apportionment and assessment of benefits on appellant's land for the maintenance of a drainage system.

The suit was brought by Byram et al., as Receivers of the C., M. & St. P. Ry. Co. The C., M. & St. P. R. R. Company was substituted in this Court.

*Messrs. H. E. Judge* and *T. M. Bailey,* with whom *Messrs. C. O. Bailey, H. H. Field, O. W. Dynes, H. H.*

*Triestal, R. L. Kennedy, H. O. Hepperle, T. L. Fuller,* and *J. H. Voorhees* were on the brief, for appellants.

*Messrs. Norman B. Bartlett* and *Elbert O. Jones,* with whom *Messrs. Benoni C. Matthews, John H. Fitzpatrick,* and *Enos G. Jones* were on the brief, for appellees.

Mr. Justice Stone delivered the opinion of the Court.

This is a suit brought by appellants, receivers of the Chicago, Milwaukee & St. Paul Railway Co. in the district court for South Dakota against the appellees, county commissioners of Minnehaha County, to enjoin the apportionment and assessment of benefits upon appellants' land for the maintenance of a drainage system, under the state agricultural drainage statutes, S. Dak., Laws 1907, c. 134, reenacted as S. Dak. Rev. Code (1919) §§ 8458–8491, as amended by S. Dak.; Laws 1920, c. 46, on the ground that the statutes and the proceedings had under them are in conflict with the Fourteenth Amendment of the federal Constitution. From an order of the district court, three judges sitting, denying an application for an interlocutory injunction the case comes here on direct appeal. Jud. Code §§ 238, 266; *Smith* v. *Wilson,* 273 U. S. 388.

One phase of the controversy now presented and the statutes involved were before this Court in *Risty* v. *Chicago, Rock Island and Pacific Ry.,* 270 U. S. 378. In that case it appeared that the railroad company, which is represented by the appellants here, owned lands in Minnehaha County, some of which had not been included within an established drainage district known as "Ditch No. 1 and Ditch No. 2." Those ditches having been seriously damaged by floods, a proceeding had been begun before the county commissioners for the enlargement and reconstruction of the system, now described as "Drainage District No. 1 and 2," with the object of assessing the benefits and cost of the work on lands of the railroad

company and others lying both within and without the original drainage district.

The suit was begun by the railroad company in the district court for South Dakota to enjoin the county officers from making any apportionment and assessment of benefits affecting the property of the railroad company, on the ground that the drainage statutes of South Dakota and the proceedings under them violated the Fourteenth Amendment of the federal Constitution. The district court held that the statutes were valid and constitutional but that the assessments for reconstruction and maintenance of the existing drainage system, so far as applied to lands outside the original drainage district, were unauthorized by the state statutes. *Chicago, Rock Island and Pacific Ry.* v. *Risty*, 282 Fed. 364. No appeal was taken by the railroad company from the decree of the district court, but on appeal by the county officials so much of the decree as involved the construction of the drainage statutes and the application to lands outside of the original drainage district was affirmed by the circuit court of appeals for the eighth circuit, 297 Fed. 710, and by this Court in *Risty* v. *Chicago, Rock Island and Pacific Ry., supra.*

Following the decision in this Court the appellants began the present suit, in which they raised anew the questions as to the constitutionality of the South Dakota drainage statutes, and sought relief the effect of which, if granted, would be to enjoin those assessments on the land of plaintiffs within the original drainage district which had been left undisturbed by the decree in the earlier litigation.

Appellees, on the present application for an interlocutory injunction, have set up that decree as *res judicata* as to all questions presented here. But an examination of the decree of the district court in the earlier litigation, set out in the present record, discloses that by its terms

the decree was "without prejudice to any and all rights
of the plaintiff to contest any such apportionment of
benefits, or any assessment which may be made" affect-
ing the land of appellants within the original drainage
district and saving the right of the railroad company in
this regard as though "this suit had not been instituted or
this decree entered." Although reliance is placed upon
this decree as *res judicata,* neither the record nor the briefs
disclose the reason for the insertion of these provisions
and no reason is suggested why its language is not to be
taken at its face value as saving to appellants the right
to litigate anew the questions now presented.

Since our decision in *Risty* v. *Chicago, Rock Island
and Pacific Ry., supra,* the supreme court of South
Dakota in *State* v. *Risty,* 51 S. Dak. 336, has had occasion
to pass upon the construction and the constitutionality of
the South Dakota drainage statutes. Taking a different
view from that of this Court and the lower courts in
*Risty* v. *Chicago, Rock Island and Pacific Ry., supra,* it
held that the proceedings involved in that litigation and
in this, for the assessment of benefits upon lands both
within and without the original drainage district, were
authorized by the statutes of South Dakota. It held that
the action taken for reconstruction of the old drainage
ditches was not a proceeding for maintenance or repair of
the old system, but a new and independent proceeding,
and that the statutes authorized the establishment of a
new drainage district embracing all the lands benefited,
whether included in the old district or not. It also con-
strued the sections regulating the proceedings for assess-
ing the benefits and costs of the reconstruction and en-
largement of the drainage ditches and, as construed, held
them constitutional. This construction of the state stat-
utes by the highest court of the state we, of course, accept.
*People of Sioux County* v. *National Surety Co.,* 276 U. S.
238; *St. Louis & Kansas City Land Co.* v. *Kansas City,*
241 U. S. 419, 427.

As determined by the state supreme court in *State* v. *Risty, supra,* the proceedings resulting in the proposed assessment now assailed were taken and authorized under S. Dak. Rev. Code (1919) §§ 8458–8463, as amended. Under § 8459 upon petition of the owners of land " likely to be affected by the proposed drainage " the Board of County Commissioners, under § 8460, caused a survey to be made of the proposed drainage project and, under § 8461, upon the filing of the surveyor's report with the Commission, fixed the line of the proposed drainage ditch as that of the preexisting ditches No. 1 and No. 2, but increased the width of the ditch from approximately forty feet, as originally established, to ninety feet. Notice of hearing upon the petition was given by publication and posting as required by § 8461, printed in the margin.[1]

---

[1] § 8461. Surveyor's Report—Notice of Hearing.—The surveyor shall report in writing to the board of county commissioners and his report shall be filed with the petition. After personal inspection or after the receipt of the surveyor's report the board shall determine the exact line and width of the ditch, if the same shall not be fixed in the petition, and shall file its determination with the petition. The board shall then fix a time and place for the hearing of the petition and shall give notice thereof by publication at least once each week for two consecutive weeks in a newspaper of the county, to be designated by the board, and by posting copies of such notice in at least three public places near the route of the proposed drainage. Such notice shall describe the route of the proposed drainage and the tract of country likely to be affected thereby in general terms, the separate tracts of land through which the proposed drainage will pass and give the names of the owners thereof as appears from the records of the office of the register of deeds on the date of the filing of the petition, and shall refer to the files in the proceedings for further particulars. Such notice shall summon all persons affected by the proposed drainage to appear at such hearing and show cause why the proposed drainage should not be established and constructed, and shall summon all persons deeming themselves damaged by the proposed drainage or claiming compensation for the lands proposed to be taken for the drainage to present their claim therefor at such hearing.

The notice as required described " the route of the proposed drainage and the tract of country .likely to be affected thereby in general terms " and specifically included the lands of the appellants, which are described in the present bill of complaint. Upon the hearing the Board of County Commissioners, acting under § 8462, made its order establishing thé drainage as prayed. Proceeding under § 8463, printed in the margin,[2] the Board then fixed tentatively the proportion of benefits of the drainage among the lands affected and particularly described and gave published notice of the time and place for all owners of the land to be heard on equalization of the benefits.

---

[2] § 8463. Equalization of Benefits.—After the establishment of the drainage and the fixing of the damages, if any, the board of county commissioners shall fix the proportion of benefits of the proposed drainage among the lands affected, and shall appoint a time and place for equalizing the same. Notice of such equalization of proportion of benefits shall be given by publication at least once each week for two consecutive weeks in a newspaper of the county to be designated by the board, and by posting copies of such notice in at least three public places near the route of the proposed drainage. Such notice shall state the route and width of the drainage established, a description of each tract of land affected by the proposed drainage and the names of the owners of the several tracts of land as appears from the records of the office of the register of deeds at the date of the filing of the petition and the proportion of benefits fixed for each tract of property, taking any particular tract as a unit, and shall notify all such owners to show cause why the proportion of benefits shall not be fixed as stated. Upon the hearing of the equalization of the proportion of benefits, the board of county commissioners shall finally equalize and fix the same according to benefits received. The proportion of benefits which any county, city, town or township may obtain by the construction of such drainage to highways or otherwise, and the benefits which any railroad company may obtain for its property by such construction, shall be fixed and equalized together with the proportion of benefits to tracts of land. Benefits to be considered in any case shall be such as accrue directly by the construction of such drainage or indirectly by virtue of such drainage being an outlet for connection drains that may be subsequently constructed.

At the outset appellants challenge the constitutionality of the statutes and proceedings on the ground that the notice of the hearing on the petition for the establishment of the drainage project fell short of constitutional requirements. It is said that notice to all persons affected by the proposed drainage, describing only " the route of the proposed drainage and the tract of country likely to be affected thereby in general terms " is too vague and indefinite to constitute notice to any land owner other than those through whose land the drainage ditch is to be constructed.

If it were necessary to our decision, we should hesitate to say that the required notice was insufficient, at least as to the owners of land embraced within the old district. For it showed unmistakably that the projected improvements were in substance an enlargement of a drainage ditch for the construction of which the lands within the district, including appellants', had already been assessed. No particular form of notice is necessary to satisfy constitutional requirements. If it be such as fairly apprises the land owner of what is proposed and affords reasonable opportunity to be heard it suffices. *North Laramie Land Co.* v. *Hoffman,* 268 U. S. 276, 283. No one who, like appellants, had paid assessments for the original construction of the ditch could have doubted that his lands were within the tract " likely to be affected " by the proposed reconstruction.

But in any case there is no constitutional reason why any notice need have been given, for the purpose of the first hearing is not to determine what lands are to be included in the assessment district. It was said by the supreme court of South Dakota in *State* v. *Risty,* 51 S. Dak. at 354:

" The hearing upon this notice is not for the purpose of determining the particular land that may be benefited by the construction of ditch, nor the extent to which any

tract of land may be benefited, but to determine whether the proposed drainage or any variation thereof shall be ' conducive to the public health, convenience, or welfare, or necessity or practical for draining agricultural lands.' If the board finds that such drainage will be conducive to the public health, convenience, or welfare, or necessary or practical for draining agricultural lands, the board may establish the drainage accordingly and proceed to let contracts for the work. It then becomes necessary to determine the particular tracts of land that will be benefited by the drainage and the extent to which it will be benefited."

Due process of law does not require notice of a proceeding to determine merely whether an improvement shall be constructed without at the same time establishing the boundaries of the assessment district. It is enough if land owners who may be assessed are later afforded a hearing upon the assessment itself. *Londoner* v. *Denver,* 210 U. S. 373, 378; *Goodrich* v. *Detroit,* 184 U. S. 432, 437, *et seq.; Voight* v. *Detroit City,* 184 U. S. 115, 122; *Embree* v. *Kansas City Road District,* 240 U. S. 242; *Soliah* v. *Heskin,* 222 U. S. 522.

No objection of substance is made to the sufficiency of the notice of the hearing on the equalization of benefits. The lands of the railroad, described in the complaint, were described in the notice as required by the statute. At that time no assessment district had been established and no lien had attached to them nor would any attach until a final assessment had been made. § 8464; *Risty* v. *Chicago, Rock Island and Pacific Ry., supra,* 388. As the statute was construed by the supreme court of South Dakota in *State* v. *Risty,* 51 S. Dak. at 354, upon the hearing for the equalization of benefits under § 8463, " an interested party may appear and show any reason why his property should not be assessed that he could have shown at the hearing for determining whether the drainage

should be established. If his property will not be benefited by the establishment of the drainage this may be shown at either hearing, and if shown at either hearing his property will not be assessed."

The state court further held that upon this hearing the land owner may be heard upon the question whether his lands are benefited by the drainage system and the extent of those benefits, if any, or whether the proposed assessment was unjust or unwarranted and may raise all constitutional objections to the assessment; citing *Milne* v. *McKinnon*, 32 S. Dak. 627, 631, 632; *State ex rel. Curtis* v. *Pound*, 32 S. Dak. 492. From determinations of the Board on either hearing appeals lie to the circuit court under § 8469.

Appellants did not appear or file objections on the date set for either hearing and under the state statute as interpreted in *State* v. *Risty, supra*, thus lost their right to urge any objection to the assessment. As the inclusion of appellants' lands in the new assessment district depended wholly upon their being benefited by the proposed improvements, their failure to avail of the opportunity afforded by the statute to make the objections to the assessment now urged forecloses all consideration of those objections here. *Farncomb* v. *Denver*, 252 U. S. 7; *Milheim* v. *Moffat Tunnel Dist.*, 262 U. S. 710; *Gorham Mfg. Co.* v. *Tax Commissioner*, 266 U. S. 265; *First National Bank* v. *Weld County*, 264 U. S. 450.

*Affirmed.*